ESTEP, Appellant,

v.

JOHNSON et al., d.b.a. Best Towing, Appellees.

ESTEP, Appellant,

v.

OHIO STATE HIGHWAY PATROL, Appellee.

[Cite as *Estep v. Johnson* (1998), 123 Ohio App.3d 307.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

Nos. 97API09–1252 and 97API09–1255.

Decided Aug. 6, 1998.

308

*Southeastern Ohio Legal Services* and *Linda C. Kowieski,* for appellant.

*Thomas M. Spetnagel,* for appellees Kevin L. Johnson and Lisa M. Johnson.

*Betty D. Montgomery,* Attorney General, and *Peggy W. Corn,* Assistant Attorney General, for appellee Ohio State Highway Patrol.

DESHLER, Presiding Judge.

Plaintiff-appellant, Marcia B. Estep, appeals from a judgment of the Ohio Court of Claims dismissing appellant's claims against defendants-appellees, Kevin L. Johnson, Lisa M. Johnson, and the Ohio State Highway Patrol, stemming from the sale of appellant's impounded vehicle.

Appellant was arrested on September 17, 1993, for operating a motor vehicle while under the influence of alcohol, driving under suspension (imposed following a previous DUI conviction), carrying a concealed weapon, and giving false statements. Because appellant had a previous DUI conviction, the arresting trooper seized appellant's 1983 Nissan Sentra, as was required under the then-applicable version of R.C. 4507.38.[1]

The trooper contacted appellees Kevin L. Johnson and Lisa M. Johnson (d.b.a. and hereinafter referred to as "Best Towing") to tow and store appellant's

---

1. Some of the applicable statutory sections in this case have been subsequently amended; however, R.C. 4507.38 was declared unconstitutional by the federal district court in *Kutschbach v. Davies* (S.D.Ohio 1995), 885 F.Supp. 1079. The parties do not assert, however, that the amendments or later finding of unconstitutionality affect the validity of enforcement by the Ohio State Highway Patrol of the statutes at the time in question.

vehicle. When Mr. Johnson arrived at the scene, the arresting trooper informed him that the vehicle could not be released to appellant without a court order and execution of an Ohio State Highway Patrol ("OSHP") document known as a form HP–60. Mr. Johnson had no contact with appellant at the scene of the arrest and discussed the tow and impoundment only with the arresting trooper.

On December 23, 1993, the Chillicothe Municipal Court sanctioned the state in appellant's case for failure to provide timely discovery to appellant's counsel under Crim.R. 16. The court ordered certain evidence barred from admission, resulting in the state's dismissal of all charges against appellant. Appellant filed a motion on December 30, 1993, to have the court order the release of her vehicle, pursuant to R.C. 4507.38(D)(1)(c), which mandates the release of a vehicle seized under the same circumstances as appellant's, when the DUI charge is subsequently dismissed:

"If the charge that the arrested person violated division (B)(1) or (D)(2) of section 4507.02 of the Revised Code, a substantially equivalent municipal ordinance, or section 4507.33 of the Revised Code is dismissed for any reason, the court shall order that the vehicle and its identification license plates immediately be returned or released to the vehicle owner or a person acting on his behalf." Former R.C. 4507.38(D)(1)(c), Sub. S.B. No. 62, 145 Ohio Laws, Part I, 534.

The Chillicothe Municipal Court denied appellant's motion, and she then appealed to the Fourth District Court of Appeals. In the interim, the OSHP refused to execute a form HP–60 without a court order ordering release of appellant's vehicle, and Best Towing refused to release the vehicle without payment of towing and storage charges and an HP–60 form.

The Fourth District Court of Appeals subsequently issued its decision in *State v. Estep* (June 26, 1995), Ross App. No. 94CA2007, unreported, 1995 WL 392878. The court found that appellant was statutorily entitled to an order of the Chillicothe Municipal Court releasing her vehicle without liability for the towing and storage expenses.

The court initially noted that the plain language of R.C. 4507.38(D)(1)(c) clearly mandated that the municipal court order release of appellant's vehicle upon dismissal of charges against her. The court then examined appellant's assertion not only that her vehicle must be released, but that she should not be required to pay any accumulated towing and storage charges.

The court held that appellant should not be required to pay any expenses as a condition for release of her vehicle. The court noted that then-applicable R.C. 4507.38(D)(1)(c) itself made no provision for payment of towing fees and that the state could point to no other section so providing. The court then examined the legislative history of the statute, particularly subsequent amendments enacted in 1994 pursuant to Sub.H.B. No. 236, which for the first time allocated impound-

ment expenses to the defendant vehicle owner. The court thus concluded that appellant could not be required, in the absence of statutory authority, to pay impoundment costs to obtain release of her vehicle. The court went on to state, although the issues were not specifically before it, that liability for payment of the expenses of towing and storage were a matter of contract law between the OSHP and Best Towing, and that "some level of state government would be liable" for the accruing charges.

In compliance with the court of appeals' decision, the Chillicothe Municipal Court subsequently entered an order pursuant to R.C. 4507.38(D)(1)(c) that appellant's vehicle held by Best Towing and her license plates held by the OSHP be returned and released to appellant and that appellant not be required to pay towing, storage, or impoundment costs as a prerequisite to return of the vehicle. In the interim, however, Best Towing had on May 20, 1994, sold appellant's vehicle to recover the cost of towing and storage. The vehicle was sold by purportedly following procedures outlined in R.C. 4505.101 for the sale of "unclaimed" motor vehicles by repair or storage garages.

Appellant was thus left with an order of the municipal court which could not be given effect, and filed an action in the Ohio Court of Claims against the OSHP seeking damages resulting from the loss of her automobile. Appellant filed a companion action in the Chillicothe Municipal Court against Best Towing. Best Towing then filed a third-party complaint against the Ohio Department of Public Safety, and a simultaneous petition for removal to the Court of Claims, which was granted. The matters were consolidated for trial on issues of liability and tried to the court on June 2, 1997.

On August 21, 1997, the Court of Claims entered its decision in favor of both the OSHP and Best Towing. The court limited its discussion to appellant's conversion claims, and the court's decision does not address appellant's claims based on alleged violations of the Ohio Consumer Sales Practices Act ("CSPA"), breach of duties as bailees, and constitutional issues. The Court of Claims found that appellant had failed to prove conversion of her vehicle by the OSHP because the OSHP was statutorily obligated to impound her vehicle, and that pursuant to R.C. 4507.38, once the vehicle was impounded, it was solely under the control of the Chillicothe Municipal Court, which alone could order its release. In the absence of wrongfully exerted dominion or control over the car, the court reasoned, appellant could not sustain her conversion action against the OSHP.

The Court of Claims also dismissed appellant's claim against Best Towing, again finding that appellant had failed to establish the elements of conversion, and further finding that Best Towing had made sufficient efforts to contact her regarding the pending sale of her vehicle and had sold her vehicle in the belief

that it had been abandoned. The Court of Claims further found that Best Towing's third-party complaint against OSHP was accordingly mooted, but, even were it not mooted, Best Towing had failed to show a right of relief against the OSHP for the same reasons that appellant failed to demonstrate a right to relief.

Appellant has timely appealed and brings the following assignments of error:

"I.   The trial court erred by finding appellant had shown no right to relief on the claims of violation of bailment.

"II.   The trial court erred by finding appellant failed to prove conversion by the Ohio State Highway Patrol by a preponderance of evidence.

"III.   The trial court erred by finding appellant failed to prove conversion by Best Towing by a preponderance of evidence.

"IV.   The trial court erred by finding appellant had shown no right to relief on her claims against the OSHP for an uncompensated taking of her property.

"V.   The trial court erred by finding appellant had shown no right to relief on her claims against the OSHP for violation of her due process rights.

"VI.   The trial court erred by finding appellant failed to show a right to relief against Best Towing for violations of the Ohio Consumer Sales Practices Act."

We will first address the Court of Claim's disposition of appellant's claims against the OSHP. These claims are based on bailment, alleging conversion, denial of due process, and violation of the bar against uncompensated takings under Section 19, Article I of the Ohio Constitution.

Appellant's first assignment of error encompasses claims against both the OSHP and Best Towing for violation of their respective duties as bailees. We will initially address only those arguments raised under this assignment of error pertaining to the OSHP.

"A bailment exists where one person delivers personal property to another to be held for a specific purpose with a contract, express or implied, that the property shall be returned or accounted for when this special purpose is accomplished or retained until the bailor reclaims the property. The duty of the bailee is to hold the property in accordance with the terms of the bailment. Bailment involves the transfer of a possessory interest only and not an ownership interest in property. A bailment may be for the benefit of only bailor or the bailee, or for the mutual benefit of both. * * * If the bailee causes or permits the property to be destroyed or damaged, this constitutes a conversion of the property to the bailee's own use." *Tomas v. Nationwide Mut. Ins. Co.* (1992), 79 Ohio App.3d 624, 628–629, 607 N.E.2d 944, 946–947.

■ A bailee cannot avoid its duties to the bailor by subsequently transferring the property to a further bailee. *Id.* at 629, 607 N.E.2d at 947.

Appellant argues that the impoundment of appellant's vehicle made the OSHP the bailee of the vehicle, and that the subsequent transfer to a further bailee, Best Towing, did not release OSHP from its duty of care to preserve the bailed property. While this initial contention has merit, it does not follow that the OSHP necessarily breached its duty of care simply by entrusting the vehicle to Best Towing.

■ Impoundment of a vehicle has been held to create a bailment relationship between the owner of the vehicle and the impounding authority. *Bader v. Cleveland* (Feb. 18, 1982), Cuyahoga App. No. 44118, unreported, 1982 WL 2354. Subsequent transfer to a private towing or storage lot has been similarly held to create a bailment between the vehicle owner and the subsequent bailee. *Lykins v. Wilson* (Oct. 21, 1997), Richland App. No. 96CA106, unreported. The cases on this point have not been clear, however, on the nature of the bailment so created. This is significant in the present case because the question whether a bailment is made for the benefit of the bailee or bailor, or the mutual benefit of both parties affects the duty of care imposed upon the bailee. It can be argued on the present facts that the bailment was for the benefit of appellant as the vehicle owner, because, being lawfully prevented from further operating her vehicle in the state of intoxication and under license suspension, she was compelled to abandon it at the point of the arrest, and removal of the vehicle to a lot placed it in a situation of reasonable security from which she was more likely to recover the vehicle intact. Conversely, it may be argued that the bailment is for the benefit of the state because it serves the state's interest in maintaining the roadways free of abandoned vehicles, and in pursuing an eventual vehicle forfeiture under the DUI statutes. Similarly, the bailment may be taken as for the benefit of the bailee in the case of the private towing service and impounding lot, Best Towing, because it was undertaken with the expectation of recovering towing and storage fees from the vehicle owner. Considering all these circumstances, we find that the bailment is best described as one made for the mutual benefit of the parties, in consideration of the various interests outlined above. If a bailment is made for the mutual benefit of the parties, then the bailee has the common-law duty to exercise ordinary care in protecting and keeping the bailed property safe. *Midwestern Indem. Co. v. Winkhaus* (1987), 42 Ohio App.3d 235, 238, 538 N.E.2d 415, 418–419.

■ We find that, on the facts in the record, appellant has not established a breach by the OSHP of its duty of ordinary care. There is no indication that Best Towing, to whom the vehicle was entrusted by the OSHP, had on any previous occasion been involved in any controversy over its towing and storage

practices for vehicles impounded under the direction of the OSHP. There is nothing to indicate that the OSHP was in any way unreasonable in placing Best Towing upon the "rotation list" for towing services on call, or summoning Best Towing to tow the vehicle on the night of appellant's arrest for DUI and driving under suspension. Nor is there any indication in the record that the OSHP was negligent in declining to order the release of the vehicle without the requisite court order. We therefore find that the Court of Claims did not err in holding that the OSHP could not be held liable to appellant for breaching its duties as bailee of the vehicle. Appellant's first assignment of error is therefore overruled to the extent that it addresses issues concerning the OSHP.

■ Appellant's second assignment of error asserts that the trial court erred in finding that appellant had failed to prove conversion of appellant's automobile by the OSHP. Conversion has been described as "any exercise of dominion or control wrongfully exerted over the personal property of another." *Ohio Tel. Equip. & Sales, Inc. v. Hadler Realty Co.* (1985), 24 Ohio App.3d 91, 93, 24 OBR 160, 162, 493 N.E.2d 289, 292. Appellant has not established that the OSHP's seizure and impoundment of her car were wrongful; in fact, as set forth above, the OSHP acted under a statutory duty to do so once appellant was stopped and found to be driving without a valid license and while intoxicated. At the time of appellant's arrest in 1993, R.C. 4511.195 provided that law enforcement officers, when arresting a person for driving under the influence of alcohol who had been convicted within the five previous years of a similar offense, seize the vehicle the person was operating at the time of the alleged offense and its license plates. R.C. 4511.195(B)(1). Similarly, R.C. 4507.38 provided that an officer arresting a person for driving without a valid license seize the vehicle and plates. R.C. 4507.38(B)(1). The seizure of appellant's vehicle and subsequent conveyance to a private towing service was therefore not a wrongful exercise of dominion or control over appellant's personal property. In the same vein, the OSHP was unable to order the subsequent release of appellant's vehicle after charges against her had been dismissed because the municipal court had declined to issue the necessary order. A refusal by OSHP to release appellant's license plates and order Best Towing to release the vehicle was also not a wrongful exercise of dominion or control over her property. The OSHP had no power to either impose towing and storage expenses on appellant or to waive them when charges against her were dismissed. All the OSHP could do was act in accordance with statute and await the order of the municipal court. When the municipal court refused to issue such an order, the OSHP was in no position to override such a refusal, until the Fourth District Court of Appeals reversed and directed the municipal court to issue the appropriate order.

Appellant having failed to establish one of the necessary elements of conversion, the Court of Claims did not err in finding that the OSHP had not converted appellant's property. Appellant's second assignment of error is accordingly overruled.

Appellant's fourth assignment of error asserts that the trial court erred in finding that the OSHP was not liable for an uncompensated loss of her property in violation of the Ohio Constitution. Generally, the Court of Claims has no jurisdiction over a claim of violation of rights under the United States or Ohio Constitutions. *White v. Ohio Dept. of Rehab. & Corr.* (Dec. 22, 1992), Franklin App. No. 92AP–1229, unreported, 1992 WL 385913.

A specific exception exists, however, in a line of cases addressing the uncompensated taking of property, which have been allowed to proceed in the Court of Claims. *Kermetz v. Cook–Johnson Realty Corp.* (1977) 54 Ohio App.2d 220, 8 O.O.3d 375, 376 N.E.2d 1357; *Chan v. Miami Univ.* (Sept. 28, 1993), Franklin App. No. 93AP–309, unreported, 1993 WL 379141, affirmed, *Chan v. Miami Univ.* (1995), 73 Ohio St.3d 52, 652 N.E.2d 644.

Appellant alleges, *inter alia,* an uncompensated taking of her property in violation of Section 19, Article I of the Ohio Constitution. The physical taking of property, or disposition of an owner's interest in property, will constitute a taking without compensation. *Smith v. Erie RR.* (1938), 134 Ohio St. 135, 11 O.O. 571, 16 N.E.2d 310; *Steinle v. Cincinnati* (1944), 142 Ohio St. 550, 27 O.O. 488, 53 N.E.2d 800. In the present case, the initial impoundment of appellant's vehicle, pursuant to statutory authority of R.C. 4507.38 and 4511.195, would not rise to the level of a taking as contemplated in the above cases. The subsequent disposition of appellant's vehicle, after the unfortunate delay by the Chillicothe Municipal Court in issuing an order for its release, was not ordered, contemplated, or condoned by the OSHP. In the absence of a breach of duty as bailee, or conversion on the part of the OSHP, it is difficult to establish a taking on the part of the state or one of its agencies in this matter. Therefore, regardless of whether the Court of Claims erred in finding it did not have jurisdiction, no uncompensated taking by the state can be found. Appellant's fourth assignment of error is accordingly overruled.

Appellant's fifth assignment of error asserts that the Court of Claims erred in finding that it did not have jurisdiction over her claims against the OSHP for violation of her due process rights. As set forth above, the Court of Claims generally does not have jurisdiction over constitutional claims, with the limited exception of claims for takings without compensation. On this issue, the Court of Claims did not err in finding that it lacked jurisdiction to hear

appellant's due process claims. Appellant's fifth assignment of error is accordingly overruled.

To summarize our disposition of appellant's assignments of error addressing her claims against the OSHP, we find that appellant established neither breach of duty of bailment nor conversion by the OSHP, and failed to establish a right to relief in the Court of Claims for infringement of her constitutional rights. We therefore affirm the judgment of the Court of Claims in dismissing appellant's claims against the OSHP.

We next address appellant's assignments of error related to the Court of Claim's dismissal of her action against Best Towing. Appellant's first assignment of error, as with appellee OSHP, asserts that Best Towing breached its duty as bailee when it sold appellant's vehicle and thus deprived her of her statutory right to have the vehicle returned to her without charge upon dismissal of the charges against her in Chillicothe Municipal Court.

Best Towing asserts that no bailment claim can be asserted because Best Towing was never in legal control of the vehicle, which could not be released without an order of the Chillicothe Municipal Court. While this may justify the initial refusal to return appellant's vehicle without the appropriate court order, that is not the basis for appellant's claims in this case. It is undisputed that Best Towing had physical possession of the vehicle following impoundment and ultimately sold the vehicle to cover the towing and storage costs. Best Towing cannot simultaneously argue the irreconcilable propositions that it did not have legal control over the vehicle and yet was able to legally sell the vehicle. The gravamen of appellant's claim is that Best Towing deprived her of the benefit of the eventual order from Chillicothe Municipal Court to have the vehicle released without cost, because Best Towing had sold the vehicle and retained the proceeds. It is this sale, and not the initial retention of the vehicle by Best Towing, that gave rise to a claim of breach of Best Towing's duty as bailee to return appellant's vehicle.

Best Towing asserts that it properly sold the vehicle pursuant to R.C. 4505.101, which provided at relevant times as follows:

"(A) The owner of any repair garage or place of storage in which a motor vehicle with a value of less than three hundred dollars has been left for fifteen days may send by certified mail, return receipt requested, to the last known address of the owner a notice to remove said vehicle. If the motor vehicle remains unclaimed by the owner for fifteen days after the mailing of such notice, the person on whose property the vehicle has been abandoned shall obtain a certificate of title to such motor vehicle in his name in the manner provided in this section." Am. S.B. No. 10, 142 Ohio Laws, Part I, 64.

This statute appears inapposite for several reasons. First, although it is not necessary to disturb the conclusion of the finder of fact on this issue, it appears unlikely the vehicle could be considered "abandoned" when its owner was diligently pursuing judicial relief, first in the Chillicothe Municipal Court, and then in the Fourth District Court of Appeals, and claimed to have informed Best Towing of this activity. Second, R.C. 4505.101 applied at the time in question only to vehicles with a value of less than $300. While Best Towing attempted to reduce the "value" of the vehicle beneath this amount by setting off accumulated towing and storage fees against the $1,300 book value of the vehicle once title had been obtained, this is not a permissible way of computing the "value" of an abandoned vehicle. Finally, the abandoned-vehicle statute should not be read to allow the sale of an unclaimed motor vehicle to collect towing and storage charges which Best Towing was specifically not entitled to receive from appellant as held in the Fourth Appellate District's prior decision.

We therefore conclude that appellee Best Towing was a bailee with respect to appellant's vehicle, and breached its duty as bailee to return the property when it improperly obtained title to the vehicle and sold it prior to the issuance of the order from the Chillicothe Municipal Court ordering the vehicle returned to appellant. Appellant's first assignment of error therefore has merit insofar as it addresses a claim of a breach of bailment duties by appellee Best Towing, and to this extent is sustained.

Appellant's third assignment of error asserts that the trial court erred in finding that appellant had failed to prove conversion by Best Towing. As stated above, the tort of conversion involves any exercise of dominion or control wrongfully exerted over the personal property of another. It is uncontroverted in the present case that Best Towing required payment from appellant of towing and storage charges before releasing the vehicle, and ultimately sold the vehicle to recover such charges. It is also uncontroverted that, at the time in question, R.C. 4507.38(D)(1)(c) mandated the return of appellant's vehicle. While the circumstances of this case were undoubtedly muddled by the initial refusal of the Chillicothe Municipal Court to enter the appropriate order providing for the release of appellant's vehicle, any exercise of dominion and control by Best Towing over the vehicle beyond the bare retention of the vehicle on the storage lot was inconsistent with appellant's statutory right to reclaim her vehicle without cost. Since it is uncontroverted that Best Towing sold the vehicle in May 1994, the inescapable conclusion is that Best Towing wrongfully exercised dominion and control over appellant's vehicle in a manner inconsistent with her rights. We therefore hold that the trial court erred in finding that appellant had failed to prove conversion by Best Towing by a preponderance of the evidence. Appellant's third assignment of error is therefore sustained.

Appellant's sixth assignment of error asserts that the trial court erred by finding that appellant had failed to show a violation of the Ohio Consumer Sales Practices Act ("CSPA"), codified at R.C. 1345.01 *et seq.* The CSPA prohibits unfair or deceptive acts and unconscionable acts or practices by suppliers in consumer transactions. The act is intended to be remedial and should be construed liberally in favor of consumers. *Einhorn v. Ford Motor Co.* (1990), 48 Ohio St.3d 27, 29, 548 N.E.2d 933, 935. Under the Act, a "consumer" is a person who engages in a consumer transaction with a "supplier." R.C. 1345.01(D). A "consumer transaction" is defined as including any "sale, lease, assignment, award by chance, or other transfer of an item of goods, a service, a franchise, or an intangible, to an individual for purposes that are primarily personal * * *." R.C. 1345.01(A). A "supplier" includes any "seller, lessor, assignor, franchisor, or other person engaged in the business of effecting or soliciting consumer transactions." R.C. 1345.01(C). The consumer need not prove that the supplier intended to commit an unfair or deceptive act to establish a violation of the CSPA, but only that such an act was committed. *Garner v. Borcherding Buick, Inc.* (1992), 84 Ohio App.3d 61, 64, 616 N.E.2d 283, 284–285. In the present case, the bailment of appellant's automobile, albeit statutorily mandated and not a voluntary transaction on the part of appellant, falls within the definition of a "consumer transaction" for services as defined in the Act.

What is less clear, however, is whether appellant established that Best Towing had committed an "unfair or deceptive act" in violation of the letter and intent of the CSPA. The Act provides no all-inclusive list of what may constitute an unconscionable act or practice, but R.C. 1345.03 does set forth the factors to be considered in making such a determination. One enumerated factor cited by appellant is whether the supplier knowingly made a misleading statement of opinion upon which the consumer was likely to rely to his determent. R.C. 1345.03(6). Appellant asserts that Best Towing in the present case misled appellant by asserting that she would have to pay towing charges prior to release of the vehicle, in violation of her statutory right to recover her vehicle free of cost, and Best Towing made misrepresentations as to the value of the car when applying for a title to sell the vehicle under R.C. 4505.101, and improperly asserted that the vehicle had been abandoned.

While Best Towing's assertion as to the value of the vehicle submitted when applying for a title pursuant to R.C. 4505.101 may have been misleading, it was not a communication, direct or indirect, which had the effect of misleading appellant in any way. While the obtaining of a title and sale of the vehicle were in violation of appellant's ownership rights, as set forth above, there was nothing deceptive or misleading in this respect at least insofar as appellant's perception of the state of affairs was concerned. We do not find that these independent

assertions and misleading statements to another party, in this instance the state, entirely unrelated to the relationship between Best Towing and appellant, consti-. tute deceptive sales practices as contemplated by the Act. With respect to the misrepresentation to appellant that her vehicle could not be recovered without payment of towing and storage fees, at the time these statements were made, they were not, in fact, misrepresentations: Best Towing was without authority to release the vehicle to appellant in the absence of a court order and permission from the OSHP. Again, while the peculiar circumstances of this case admittedly left all parties in limbo as to their rights and duties regarding release of the vehicle pending the eventual decision by the Fourth District Court of Appeals, we reiterate that the ultimate disposition of the vehicle by Best Towing was clearly impermissible. The mere *retention* of the vehicle by Best Towing was not in violation of appellant's rights pending the court order, and such retention by Best Towing was not a misleading or unconscionable act.

We therefore find that Best Towing, while it may have violated its duties as bailee and eventually converted appellant's vehicle, did not do so in violation of the specific provisions of the OSPA. Appellant's sixth assignment of error is accordingly overruled.

In summary of our disposition of appellant's assignments of error relating to Best Towing, appellant's first assignment of error is sustained in part and appellant's third assignment of error is sustained. The appellant's sixth assignment of error is overruled. Regarding the appellant's claims against the OSHP, appellant's first assignment of error is overruled as far as it raises a breach of bailment duty by the OSHP, and appellant's second, fourth, and fifth assignments of error are overruled.

The matter is remanded to the Court of Claims for a determination of damages based upon appellee Best Towing's conversion of appellant's vehicle and consequent breach of its duty as bailee. While our disposition of this case raises some question whether appellee Best Towing's claim in contract against the OSHP was properly dismissed by the trial court, that determination was not raised as a conditional cross-appeal by Best Towing in this appeal. Therefore, the determination of the trial court in this respect will not be disturbed. The dismissal of appellant's claims against the OSHP by the trial court is affirmed in all respects.

*Judgment affirmed in part,*
*reversed in part*
*and case remanded with instructions.*

BOWMAN and REILLY, JJ., concur.

ARCHER E. REILLY, J., retired, of the Tenth Appellate District, was assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.